UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRACY SPRADLIN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELANCO ANIMAL HEALTH, INC.,<br><br>Defendant. | ) | No. 1:24-cv-01299-JRO-MG |
| SUSAN KRAUS-SILFEN,<br><br>Plaintiff,<br><br>v.<br><br>ELANCO ANIMAL HEALTH, INC.,<br>CHEWY, INC.,<br>PETCO HEALTH AND WELLNESS COMPANY, INC.,<br>PETMED EXPRESS, INC.,<br>TRACTOR SUPPLY COMPANY,<br>PETSMART, INC.,<br><br>Defendants. | ) | No. 1:25-cv-00168-JRO-MG |

**ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY CLASS APPROVAL**

Named Plaintiffs Tracy Spradlin and Susan Kraus-Silfen (collectively, the "Named Plaintiffs," and, collectively, with the other members of the Settlement Class (the "Settlement Class Members" or "Class Members"), on the one hand, and Elanco Animal Health, Inc; Chewy, Inc.; Petco Health and Wellness Company, Inc.; Petmed Express, Inc.; Tractor Supply Co. (collectively with its

wholly-owned subsidiary, Petsense LLC, to which the substantive allegations in the underlying complaints are directed); and PetSmart, Inc. (collectively, "Defendants"), on the other hand, have entered into a Class Action Settlement Agreement and Release dated May 11, 2026, and the First Amendment to Settlement Agreement dated August 27, 2026, (altogether the "Settlement Agreement") to settle the above-captioned litigation ("Litigation"). Named Plaintiffs filed an Unopposed Motion for Entry of Preliminary Approval Order ("Motion") pursuant to Federal Rule of Civil Procedure 23(e). Dkt. 247.[1] Defendants do not oppose the motion. *Id.*

For the reasons stated below, Named Plaintiffs' motion for preliminary approval, dkt. [247], is **GRANTED**.

## I. FACTS AND BACKGROUND[2]

These are two antitrust actions related to Elanco Animal Health Inc.'s ("Elanco") topical flea and tick products for dogs and cats, Advantix Products, which contains Imidacloprid as the active ingredient. Plaintiffs allege that Defendants conspired to sell only Elanco's Advantix Products and exclude generic brand Imidacloprid topical flea and tick products. Plaintiffs Tracy Spradlin and Susan Kraus-Silfen, purported class representatives, filed separate

[1] Unless otherwise stated, docket citations are to the docket of Case No. 1:25-cv-168.

[2] The Order incorporates the defined terms set forth in the Settlement Agreement and Release, dkt. 247-2, and the First Amendment to Settlement Agreement, dkt. 274-1. Terms and phrases used in this Preliminary Approval Order not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement.

actions but have negotiated a global settlement with Defendants that would resolve both lawsuits.[3]

**A. Antitrust Allegations**

Elanco produces and manufactures Advantix Products. Dkt. 217-2 at 3. Plaintiffs allege a market comprised solely of topical, Imidacloprid-based flea and tick products, and that Elanco was the only participant in this market from 2002 to 2017, allowing it to obtain "brand recognition in the market and entrenched relationships with veterinarians, pet retails, and consumers." *Id.* When true generic Imidacloprid-based competitors entered the market in 2017, Elanco took two steps to promote its brand that Plaintiffs allege were anticompetitive. *Id.*

First, Elanco entered into a series of agreements with pet specialty retailers: Chewy, Inc. ("Chewy"); Petco Health and Wellness Company, Inc. ("Petco"); PetMed Express, Inc. ("PetMed"); Petsense LLC ("Petsense"); and PetSmart LLC ("Petsmart") (collectively the "Pet Specialty Retailers" and Defendants herein). *Id.* at 3–4. Those agreements incentivized retailers to refrain from selling generic Imidacloprid topicals by offering a discount on Elanco's product (the "Imidacloprid Exclusivity Discount"). *Id.* Plaintiffs allege this scheme

---

[3] In light of the parties' settlement, Plaintiffs' motion to file a consolidated amended class action complaint, dkt. 212, was denied as moot, dkts. 218 & 239. This Order, however, summarizes the allegations as raised in the proposed consolidated amended class action complaint, dkts. 213 (sealed) & 217-2 (redacted), and summarized in the Settlement Agreement, dkts. 247-2 & 274-1. The Court is cognizant of the fact that, but-for settlement, the Court would have considered whether to allow the case to proceed under the consolidated amended class action complaint. The proposed consolidated amended class action complaint, therefore, best encapsulates Plaintiff's contentions, which the parties have decided to settle.

"prolonged Elanco's preexisting monopoly on the Imidacloprid topical market, exploiting the market's high barriers to entry and maintaining Advantix's resulting supra-competitive pricing." *Id.* at 4.

Second, Elanco implemented a minimum advertised price policy. *Id.* at 5. This policy "guarante[ed] the Retailers' profit margins by eliminating price competition." *Id.* In other words, Retailers could not offer the Advantix Products at a lower price than their competitors. Plaintiffs allege this amounted to a "coordinated scheme of exclusive dealing and price-fixing" with Elanco acting as ringmaster. *Id.* at 5–6.

Plaintiffs say that these two strategies insulated Advantix Products from price competition, both from generic products with the same active ingredient and from Pet Specialty Retailers seeking to underprice one another to gain customers. As a result, consumers paid higher prices for Advantix Products. *Id.* at 6.

Plaintiff Tracy Spradlin purchased Advantix Products from PetSmart in 2021 and from Petco in 2023. Plaintiff Susan Kraus-Silfen purchased Advantix Products online from Chewy four times between March 2020 and June 2024. *Id.* at 7.

On behalf of themselves and similarly-situated consumers, Spradlin and Kraus Silfen brought separate suits against Elanco and the Pet Specialty Retailers alleging violations of federal and state antitrust laws for the alleged conspiracy. *See* dkt. 249 at 4–5.

### B. The *Tevra* Litigation

The day after Spradlin filed her case, a jury in a comparable antitrust suit against Elanco's predecessor, Bayer LLC, ruled in Bayer's favor. Dkt. 249 at 4 (citing Verdict Form, *Tevra Brands LLC v. Bayer HealthCare LLC ("Tevra"),* No. 19-cv-4312, Dkt. No. 485 (N.D. Cal. Aug. 1, 2024)). The jury found that the plaintiffs there failed to establish a relevant antitrust market, an essential element of the antitrust claims. *Id.* at 2. This instant matter has been styled as "copycat" litigation to the *Tevra* case. *Id.* at 2. The failure of the *Tevra* plaintiffs to establish a relevant market suggested Plaintiffs here may face similar challenges, exposing a possible weakness in their case. *See id.* at 4–5.

### C. Procedural History

All parties vigorously litigated the case: the parties engaged in motions practice spanning October 2024 to March 2026; plaintiffs' expert prepared a 115-page expert report opining damages could run as high as $48.5–$72.3 million, dkt. 267-1 at 82; document production included more than 200,000 documents from Defendants, which Plaintiffs reviewed with the use of technology assisted review and artificial intelligence, dkt. 247-1 ¶ 14; and the magistrate judge presided over a multitude of discovery disputes, status conferences, and settlement conferences, *e.g.* dkts. 65, 91, 101, 110, 111, 131, 138, 145, 160, 171, 178, 181, 194, and 209. Plaintiffs maintain that, should the case move forward, more work remains to be done, including "further discovery, document production, depositions, expert discovery, more motion practice, trial, and appeal." Dkt. 247-1 ¶ 15.

In spring of 2026, the parties reached a settlement agreement. *See* dkt. 239.

**D. Proposed Settlement**

On May 11, 2026, Named Plaintiffs filed a motion for preliminary approval of class action settlement. Dkt. 247. The proposed Representative Plaintiffs are Tracy Spradlin and Susan Kraus-Silfen. The proposed settlement class ("Class" or "Class Members" or "Settlement Class Members") is

> All Persons in the United States who, from January 1, 2016 to the date of the Preliminary Approval Order, purchased an Imidacloprid Product sold in the United States from a Pet Specialty Retailer. Specifically excluded from the Settlement Class are Defendants; Releasees; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party, and any person acting on their behalf. Also excluded from the Settlement Class are any federal, state, or local governmental entities, Co-Lead Settlement Class Counsel, the Judges presiding over the Action, his or her law clerks, their spouses, and immediate relations, and any person or entity who or which properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements to be set forth in the notice to Class Members.

Dkt. 247-2 at 13.

Named Plaintiffs have submitted to the Court the Settlement Agreement that would resolve their claims against the Defendants. Dkt. 247-2. Some of the critical provisions are:

- The total settlement amount is $9,275,000.00. *Id.* at 11 (Settlement Agreement § 1(dd)).

- Elanco will pay $6,750,000 to settle the claims of the Class. *Id.* at 12, 26 (Settlement Agreement §§ 1(ff), 9(b)).
- Petco will pay $700,000 to settle the claims of the Class. *Id.* ((Settlement Agreement §§ 1(gg), 9(b)).
- PetSmart will pay $700,000 to settle the claims of the Class. *Id.* ((Settlement Agreement §§ 1(jj), 9(b)).
- Chewy will pay $600,000 to settle the claims of the Class. *Id.* at 11 ((Settlement Agreement §§ 1(ee), 9(b)).
- PetMeds will pay $275,000 to settle the claims of the Class. *Id.* ((Settlement Agreement §§ 1(hh), 9(b)).
- Petsence will pay $250,000 to settle the claims of the Class. *Id.* ((Settlement Agreement §§ 1(ii), 9(b)).
- Attorneys' Fees and Costs, Service Awards, Notice Costs, and Administrative Costs will be paid from the Settlement Amount. *Id.* at 26 (Settlement Agreement § 8).
- The Net Settlement Fund is the Settlement Amount minus the Attorney's Fees and Costs, Service Awards, Notice Costs, and Administrative Costs. *Id.* at 7 (Settlement Agreement § 1(s)).
- All Settlement Class Members may submit claims to receive a Cash Payment for each Imidacloprid Product purchased from a Pet Specialty Retailer, $10.00 per purchase, capped at $20.00 per pet and $40.00 per household for Claimants without valid proof of purchase and $10.00 per purchase with no cap for Claimants with valid proof of purchase. *Id.* at 31 (Settlement Agreement § 11(e)).
- To receive a Cash Payment, Settlement Class Members must submit a Claim Form (either in paper form or on the Settlement Website) that includes Valid Proof of Purchase if applicable. *Id.* at 29–30 (Settlement Agreement § 11(e)); *see also id.* at 62–66 (Settlement Agreement Exhibit A2).

- After receiving the Claims and providing time for correcting deficiencies has passed, the Settlement Administrator will calculate the Calculated Cash Payment Total. If the Calculated Cash Payment Total exceeds the Net Settlement Fund, then the Cash Payment amounts will be proportionally reduced on a *pro rata* basis to all Claimants. If the Net Settlement Fund exceeds the Calculated Cash Payment Total, then the Cash Payment amounts will be proportionately increased on a *pro rata* basis until the Net Settlement Fund is exhausted. *Id.* at 33 (Settlement Agreement § 11(e)).
- Defendants agree to make the following practice changes:
  - Elanco will not offer the Imidacloprid Exclusivity Discount for a period of five (5) years, *id.* at 41 (Settlement Agreement § 18(a));
  - Each Pet Specialty Retailer will not receive an Imidacloprid Exclusivity Discount from Elanco for a period of five (5) years (or in the case of Chewy, two (2) years), *id.* 42–45 (Settlement Agreement § 18(b)–(f)).
  - Each Pet Specialty Retailer will consider offering for sale an Imidacloprid topical flea and tick product manufactured by a person other than Elanco for a period of one (1) year, if that Pet Specialty Retailer has not already offered such a product for sale since May 11, 2026 (or in the case of Chewy, since February 12, 2026), *id.* 42–45 (Settlement Agreement § 18(b)–(f));
- Within thirty (30) days after the Court grants Plaintiffs' motion for preliminary class approval, Defendants will work in good faith to provide reasonably accessible class data to the Settlement Administrator. *Id.* at 20 (Settlement Agreement § 6(d)). Within seventy-five (75) days after the Court grants Plaintiffs' motion for preliminary class approval, the Settlement Administrator will substantively complete dissemination of the Short Form Notice to Class

Members and establish the Settlement Website. *Id.* at 8, 20 (Settlement Agreement §§ 1(t), 6(e)).

- Class Members may opt out of the Class by submitting requests for exclusion to the Settlement Administrator up to forty-five (45) days after the Notice Deadline. *Id.* at 21 (Settlement Agreement § 6(f)).
- Class Members may object to the Settlement by submitting written objections to the Settlement Administrator up to forty-five (45) days after the Notice Deadline or by directing their legal counsel to submit the written objection via the Court's electronic case filing system. *Id.* at 22–23 (Settlement Agreement § 6(k)).
- On the Effective Date, Plaintiffs and Settlement Class Members will release any and all claims, known or unknown, related to the facts asserted in this action against the Defendants. *Id.* at 9, 24 (Settlement Agreement §§ 1(z), 7(a)).
- Class counsel will apply to the Court for an award of attorneys' fees not to exceed thirty-five percent (35%) of the Settlement Amount, plus out-of-pocket expenses incurred. *Id.* at 25–26, 74 (Settlement Agreement § 8(a)–(c), Settlement Agreement Exhibit B).
- Class counsel will move for Service Awards of $10,000 for each of the two lead Plaintiffs. *Id.* at 27 (Settlement Agreement and Release § 8(d)).

## II. APPLICABLE LAW

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," *Arreola*

*v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size fits-all formula for deciding the class-action question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

A court's approval is required when "a class [is] proposed to be certified for purposes of settlement." Fed. R. Civ. P. 23(e). Also, courts must direct notice of a settlement class "in a reasonable manner to all Class Members who would be bound by the proposal" so long as giving notice is justified by the parties' showing that the court "will likely be able to (i) approve the proposal under 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) requires that a Court determine the settlement is "fair, reasonable, and adequate" before approving a binding class settlement. *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014). The Court's notice must meet the requirements of Rule 23(c)(2)(B).

"Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation." *Simpson v. Dart,* 23 F.4th 706, 711 (7th Cir. 2022). In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria." *Santiago*, 19 F.4th at 1016. Here, the parties seek class certification under Rule 23(b)(3), dkt. 249 at 12, 14–18, so "common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy." *Santiago*, 19 F.4th at 1016.

"A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites' for class certification have been met." *Id.* When parties seek class certification as part of a settlement, the provisions of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## III. DISCUSSION

### A. Class Certification

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem*, 521 U.S. at 618–20. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith*, 387 F.3d at 614 (quoting *Amchem*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).

Here, Plaintiffs have met their burden of satisfying the Rule 23(a) and (b) requirements.

**1. Rule 23(a)(1) requirements**

**a. Numerosity**

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class consists of:

> All Persons in the United States who, from January 1, 2016 to the date of the Preliminary Approval Order, purchased an Imidacloprid Product sold in the United States from a Pet Specialty Retailer. Specifically excluded from the Settlement Class are Defendants; Releasees; the officers, directors, or employees of any Defendant or Released Party; any entity in which any Defendant or Released Party has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or Released Party, and any person acting on their behalf. Also excluded from the Settlement Class are any federal, state, or local governmental entities, Co-Lead Settlement Class Counsel, the Judges presiding over the Action, his or her law clerks, their spouses, and immediate relations, and any person or entity who or which properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements to be set forth in the notice to Class Members.

Dkt. 247-2 at 13 (Settlement Agreement § 2(a)). Plaintiffs contend that this amounts to thousands of Class Members involving 13.1 million units sold. Dkt. 249 at 11. Courts in the Seventh Circuit have found that substantially smaller classes satisfy the numerosity requirement. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Because the proposed Class is so numerous that

joinder of all members would be impracticable, Plaintiffs have satisfied the numerosity requirement.

**b. Commonality**

To satisfy Rule 23's commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)). Here, Plaintiffs contend that Defendants engaged in anticompetitive behavior that artificially inflated prices for Advantix Products, thereby violating federal and state antitrust laws and affecting all putative Class Members. Dkt. 249 at 13. This is undoubtedly a question of law and fact that is common to the proposed Class. For that reason, Plaintiffs have satisfied the commonality requirement.

**c. Typicality**

To satisfy the typicality requirement, "the claims or defenses of the representative party [must] be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the

claims of the named plaintiffs and those of other Class Members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Plaintiffs have satisfied the typicality requirement because their claims are typical of those of the Class since all claims arise from Class Member's alleged injury in purchasing the Advantix products at an artificially inflated price due to the alleged antitrust violations. Dkt. 249 at 13–14.

**d. Adequacy of Representation**

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem*, 521 U.S. at 625. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Plaintiffs have satisfied the adequacy-of-representation requirement. Plaintiffs' claims are typical of those brought by other Class Members, and their interests appear to be entirely consistent with those of the other Class Members because they—like the other Class Members—seek to maximize the Class's recovery from Elanco and the Pet Specialty Retailers for the alleged antitrust violations.

Plaintiffs have actively participated in this litigation by overseeing the litigation and communicating with Class Counsel at all stages of the litigation. Dkt. 249 at 19. And the fact that Plaintiffs seek Service Awards does not undermine the adequacy of their representation. *See Scott v. Dart*, 99 F.4th 1076, 1082–83 (7th Cir. 2024) ("[I]ncentive awards to named plaintiffs are permitted so long as they comply with the requirements of Rule 23.").

Plaintiffs' counsel has also invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, litigating this case, participating in mediation, and negotiating a detailed and comprehensive settlement. Dkt. 247-1 ¶¶ 18–20. Last, Plaintiffs' counsel has experience litigating complex consumer class actions, including consumer and antitrust suits. *Id.* at 2–5.

**2. Rule 23(b)(3) requirements**

Having determined that Plaintiffs' proposed Class satisfies all of Rule 23(a)'s requirements, the Court must evaluate whether it satisfies any one of the three requirements in Rule 23(b). Certification of a class under Rule 23(b)(3) is proper if "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism. *Id.* In assessing whether those requirements have been met, courts should consider:

> (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

Plaintiffs have shown that common questions of law and fact predominate. Specifically, the core issue—whether Defendants engaged in an anticompetitive conspiracy that inflated prices in the relevant market—is identical for all Class Members. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016). The issues of damages also predominate the claims. Dkt. 248-1 ¶¶ 194–198. Furthermore, Plaintiffs have shown that, for this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis. *See* dkt. 249 at 17–18. Accordingly, class resolution would be superior to other available methods of pursuing these claims.

The Court certifies the class for settlement purposes under Rule 23(b)(3).

**B. Preliminary Appointment of Class Counsel**

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the Class Members. See Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> i. the work counsel has done in identifying or investigating potential claims in the action;
>
> ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> iii. counsel's knowledge of the applicable law; and
>
> iv. the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs are represented by Edward Ciolko and Arturo Peña Miranda of Sterlington, PLLC, and Eric Dirks and Clint Mann of Williams Dirks Dameron LLC. Dkt. 247-2 at 7 (Settlement Agreement § 1(g)); Dkt. 249 at 25. These attorneys have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' claims. *See* dkt. 247-1 ¶¶ 2–5. Plaintiffs' counsel also have experience litigating consumer class actions, including numerous antitrust price fixing cases they have filed, litigated, and settled around the country. *Id.* As such, the Court preliminarily appoints Eric Dirks, Arturo Peña Miranda, Clint Mann, and Edward Ciolko as Class counsel.

**C. Preliminary Settlement Approval**

**1. Adequacy of representation of the class**

As explained above, Plaintiffs and Class Counsel have adequately represented the Class.

**2. Settlement Agreement was negotiated at arm's length**

The Settlement Agreement and Release was negotiated at arm's length. As explained in Plaintiffs' brief, the Settlement Agreement is the product of almost nineteen (19) months of litigation. *See* dkt. 249 at 4–8. Furthermore, the

Settlement Agreement was the result of not one, but two settlement conferences followed by additional settlement negotiations. *Id.* Last, the consideration to be paid by the Defendants is $9,275,000 in cash, and no portion of the Settlement Fund will revert to Defendants. Dkt. 247-2 at 10, 34 (Settlement Agreement §§ 1(dd), 11(g)).

**3. The Settlement Agreement treats Class Members equitably relative to each other**

The Settlement Agreement treats Class Members equitably relative to each other. It guarantees Class Members a right to submit claims based on their Advantix Products purchased, so Class Members who suffered greater harm through multiple purchases may be recompensed for their greater injury, and all Claimants will receive a cash payment on a *pro rata* basis. *See* dkt. 247-2 at 30–34 (Settlement Agreement § 11(e)).

**4. The relief provided by the Settlement Agreement is adequate**

The $9,275,000 in relief is adequate. All Claimants are eligible to receive a *Pro Rata* Cash Payment no matter their injury, and Cash Payments will be made to all Class Members under the same formula. Dkt. 247-2 at 30–34 (Settlement Agreement § 11(e)). Elanco also agrees to cease the complained-of Imidacloprid Exclusivity Discount for a period of five (5) years, and each Pet Specialty Retailer agrees to consider in good faith offering for sale a generic Imidacloprid topical flea and tick product. *Id.* at 41–44 (Settlement Agreement § 18). Accordingly, this all weighs in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.

**5. The strength of Plaintiffs' case compared against the amount of Defendants' settlement offer**

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n.44 (7th Cir. 1979)). Here, continued litigation with the Defendants presents significant risks and costs—the most obvious risk is that Plaintiffs will not be successful on their claims. This is compounded by the fact that the litigants in the *Terva* case went to trial, and plaintiffs there failed to prove that the market alleged here—topical, Imidacloprid-based flea and tick products—was an actual market. *Tevra*, No. 19-cv-4312, Dkt. No. 485 (N.D. Cal. Aug. 1, 2024). The result in *Terva* suggests a possible fatal weakness in Plaintiff's case. Furthermore, "[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002)). Moreover, as explained above, the consideration to be paid by the Defendants is $9,275,000 in cash, and no portion of the Settlement Fund will revert to Defendants. Dkt. 247-2 at 10, 34 (Settlement Agreement §§ 1(dd), 11(g)). This sum is less than the total damages estimated by Plaintiff's expert, dkt. 267-1 at 82, which the Court preliminary finds is due to the weakness in Plaintiffs'

case. Accordingly, the strength of Plaintiffs' case compared to Defendants' proposed settlement weighs in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release.

### 6. The likely complexity, length, and expense of continued litigation

The likely complexity, length, and expense of trial weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release. Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended. The parties anticipate needing to litigate renewed motions to dismiss, motions for class certification, ongoing discovery, trial, and eventual appeal if this case did not settle. Dkt. 247-1 ¶ 15. All this would come at significant length, expense, and complexity.

### 7. Opposition to the Settlement Agreement

Because the parties have not yet sent the notice, it is premature to assess this factor.

### 8. The opinion of experienced counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release. Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996), and as explained above, counsel for the parties are experienced and highly competent. Counsel here represented to the Court that the Settlement constituted a fair, reasonable, and excellent result

for the class "without a doubt." Dkt. 247-1 ¶ 7. Further, there is no indication that the Settlement Agreement is the victim of collusion. *See Isby*, 75 F.3d at 1200. Class counsel will be paid up to thirty-five percent (35%) of the Settlement Amount, plus reimbursement of its reasonable litigation expenses. Dkt. 247-2 at 25–26, 74 (Settlement Agreement § 8(a)–(c), Settlement Agreement Exhibit B).

**9. The stage of the proceedings and the amount of discovery completed**

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. This litigation has been ongoing for over nineteen (19) months, including extensive motions practice and discovery, multiple settlement conferences, and informal settlement negotiations. *See supra* Section I.C. A motion to file a consolidated complaint was filed. Dkt. 212. Defendants opposed this. Dkt. 219. If granted, this consolidated complaint would have drawn another motion to dismiss. Plaintiffs have already received and reviewed more than 200,000 discovery documents and prepared an expert report. Dkt. 247-1 ¶ 14. While there is more discovery that could be done, there is no indication that additional discovery would further assist the parties in reaching a settlement agreement that is fair to the Class. Accordingly, this factor weighs in favor of the fairness, reasonableness, and adequacy of the Proposed Settlement Agreement.

**D. Class Notice, Objections, and Opt-Outs**

Under Federal Rule of Civil Procedure Fed. R. Civ. P. 23(c)(2)(B), a notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Further, when presented with a proposed class settlement, a court "must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The contents of a Rule 23(e) notice are sufficient if they inform the Class Members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." 3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The proposed notice satisfies Rule 23's requirements and puts Class Members on notice of the Settlement Agreement and Release. The Settlement Administrator will mail and email notices to the Class Members. Dkt. 247-2 at 21 (Settlement Agreement § 6(e)); *see also id.* at 58–61, 67–79 (Settlement Agreement Ex. A1 (Short Form Notice) and B (Long Form Notice)). Notice will also be published on a website established by the Settlement Administrator. Dkt. 247-2 at 19–20 (Settlement Agreement § 6(e)).

Moreover, the proposed notice is appropriate because it describes the terms of settlement, informs the Class about the allocations of attorney's fees

and expenses, explains how Class Members may opt-out of the Class and object to the settlement, and provides specific information regarding the date, time, and place of the final approval hearing. Dkt. 247-2 at 58–61, 67–79 (Settlement Agreement Ex. A (Short Form Notice) and B (Long Form Notice)); *see Air Lines Stewards & Stewardesses Ass'n Loc. 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified potential Class Members of the significance of judicial approval of the settlement and informed them of the opportunity to object at a hearing satisfied due process).

**E. Preliminary Appointment of Settlement Administrator**

Plaintiffs request the preliminary appointment of Angeion Group, LLC ("Angeion") to serve as Settlement Administrator. Dkt. 249 at 9. Plaintiffs contend that "Given Angeion's unique experience in similar settlements, Class Counsel's experience working with Angeion in connection with other settlements, and their confirmation that it will receive no undisclosed payments, Angeion should be approved." *Id.* at 9 n.4. Plaintiffs have confirmed that Angeion's only source of revenues for its work in this case will be pursuant to their agreement for administration services. *Id.* Given the complexity and size of this case, Angeion's services in connection with implementing the notice plan will be helpful. Therefore, the Court preliminarily appoints Angeion as Settlement Administrator.

## IV. CONCLUSION[4]

Plaintiffs' Motion for Preliminary Approval, dkt. [247], is **GRANTED**.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), Plaintiffs have shown that the Court will likely be able to (i) approve the Settlement Agreement and Release under Rule 23(e)(2); and (ii) certify the Class for purposes of the Settlement Agreement only.

The Court finds that it will likely be able to approve the Settlement Agreement as fair, reasonable, and adequate, subject to the right of any Class Member to challenge the Settlement Agreement and Release at a hearing after notice has been disseminated to the class.

The Court finds that it will likely be able to hold that the proposed settlement consideration and class relief are fair, reasonable, adequate, and equitable for purposes of the Settlement Agreement, and to approve the Release provided to the Releasees.

The Court preliminarily appoints Angeion Group, LLC to serve as Settlement Administrator. The Court also finds that it will likely be able to approve Angeion to serve as Settlement Administrator after final approval and that it will likely be able to approve the Claim process. Angeion will be responsible for disseminating Class Notice in the form set forth at Exhibits A1

---

[4] The parties initially sought a preliminary injunction enjoining all Settlement Class Members from bringing new litigation related to the claims of this case. *See* dkt. 247-4 ¶ 24. The parties later withdrew their request, stating they agree "there is no need for a preliminary injunction at this time." Dkt. 274 at 2. Accordingly, the Court's order contains no preliminary injunction.

and B to the Settlement Agreement and for undertaking all Settlement Administrator duties contemplated by the Settlement Agreement prior to the Court's grant or denial of final approval of the Settlement Agreement.

The Court preliminarily certifies the proposed Class and designates the following plaintiffs as Representative Plaintiffs: Tracy Spradlin and Susan Kraus-Silfen.

The Court preliminarily appoints Eric Dirks, Arturo Peña Miranda, Clint Mann, and Edward Ciolko as Class Counsel.

The preliminary certification of the proposed Class, the preliminary designation of class representatives, and the preliminary designation of Class counsel established by this Order shall be automatically vacated if the Settlement Agreement is terminated or is disapproved by the Court, any appellate court and/or any other court of review, or if any of the Released Parties successfully invokes its right to terminate the Settlement Agreement, in which event the Settlement Agreement and the fact that it was entered into shall not be offered by the Released Parties or construed as an admission or as evidence for any purpose, including the "certifiability" of any class.

The Court determines that distribution of the Class Notice to be given as memorialized in the Saunders Declaration filed concurrently with Plaintiffs' Motion for Preliminary Approval, dkt. 247-3, is reasonable and the best practicable notice under the circumstances; satisfies Rule 23(h) of the Federal Rules of Civil Procedure; is reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Settlement Agreement, their right to

object to and opt-out of the Settlement Agreement, the effect of the Settlement Agreement (including the releases to be provided thereunder), Class counsel's request for attorneys' fees, reimbursement of litigation expenses and settlement administration expenses, and the requested service awards for Plaintiffs; constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and meets the requirements of due process, the Federal Rules of Civil Procedure, and the United States Constitution.

The Court preliminarily finds that with an agreement between Plaintiffs and Defendants it will likely be able to certify and approve a settlement class under Federal Rule of Civil Procedure 23.

The Court preliminarily approves the Settlement Agreement as sufficiently fair and reasonable to warrant sending notice to the Class preliminarily certified for settlement purposes and hereby directs Plaintiffs and Angeion to give notice to the class as set forth in the Settlement Agreement.

Plaintiffs shall file proof by affidavit or declaration of the distribution of the Class Notice at or before the Final Approval Hearing.

Any attorneys hired by individual members of the Class for the purpose of objecting to the Settlement Agreement and Release shall file with the Clerk of the Court and serve on Class counsel and Defendants' counsel a notice of appearance no later than the Objection/Opt-Out Deadline.

Class Members who object to the settlement must follow the procedure as outlined in the Settlement Agreement § 6(k)–(m). Unless otherwise ordered by the Court, Class Members who do not timely make their objections as provided by

that section will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement Agreement, as outlined in the Settlement Agreement § 6(m).

Class Members who wish to exclude themselves must follow the procedure as outlined in the Settlement Agreement § 6(g)–(j). Class Members who do not file timely written requests for exclusion in accordance with the Settlement Agreement shall be bound by all subsequent proceedings, orders, and judgments in this action, as outlined in the Settlement Agreement and Release § 6.

Class Counsel and Defendants' counsel shall promptly furnish each other with copies of any and all objections and requests for exclusion that come into their possession. Any objector requesting access to confidential materials must first obtain leave of Court and agree to be bound by an agreed confidentiality order issued by the Court, which shall provide for the same confidentiality obligations that applied to the parties during the litigation and as provided by the Settlement Agreement and Release.

Any attorney hired by a Settlement Class Member for the purpose of objecting to the Settlement Agreement or to the proposed Settlement or to the Attorneys' Fees and Costs will be at the Settlement Class Member's expense

The Court may supplement this Order as it deems necessary and appropriate and may extend any of the deadlines set forth in this Order upon a showing of good cause.

The Court hereby adopts the following schedule for the Final Approval Hearing and the actions which must proceed it:

| | From Date of Order Granting Preliminary Approval |
|---|---|
| Defendant will provide list of available addresses for Settlement Class Members to the Settlement Administrator and reasonably accessible class data for the purpose of class administration, including known contact information (including emails) and any reasonably accessible information about consumer purchases | October 19, 2026 |
| Notice Date | January 8, 2027 |
| Deadline to File Motion for Approval of Attorneys' Fees and Costs to Plaintiffs' Counsel and Service Awards to Class Representatives | January 29, 2027 |
| Objection Date | February 25, 2027 |
| Opt-Out Date | February 25, 2027 |
| Claim Deadline | February 25, 2027 |
| Motion for Final Approval | March 18, 2027 |
| Response(s) to Objection(s) | March 18, 2027 |

A Final Approval Hearing will be held on **April 1, 2027, at 2:00 p.m.** in Room 329, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana.

**SO ORDERED.**

Date: 9/17/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel